[Civ. No. 17032. Fourth Dist., Div. Two. Oct. 20, 1976.]

BOARD OF SUPERVISORS OF SAN BERNARDINO COUNTY, Plaintiff and Appellant, v.
THEODORE G. KRUMM, as Presiding Judge, etc., et al.,
Defendants and Respondents.

936

**COUNSEL**

Stanford D. Herlick, County Counsel, and Roger N. Kehew, Jr., Chief Deputy County Counsel, for Plaintiff and Appellant.

Farrell & Farrell, Robert J. Farrell and James A. Smith for Defendants and Respondents.

## OPINION

## McDANIEL, J.—

### INTRODUCTION

This case is the outgrowth of a dispute between the Council of Supervising Judges of the Municipal Court of San Bernardino County and that county's board of supervisors. One of the judges made an order in February 1975 directing the Marshal of San Bernardino County to hire two additional deputies and to procure all necessary equipment to support the hirings ordered. The order made a finding of an existing emergency condition "in that two additional deputy marshal positions [were] necessary . . . to provide properly trained personnel for the new judgships [*sic*]. . ." Notwithstanding the order noted, the county administrative officer, at the instance of the board of supervisors, directed the auditor-controller not to pay the new personnel if they were hired.

Within a few weeks after the directive to the auditor-controller noted, the board of supervisors filed an action for declaratory relief and for an injunction prohibiting the marshal from hiring any deputy marshals in excess of those authorized by the Government Code. The defendants cross-complained for a writ of mandate to compel the plaintiff to pay the salaries of the two deputy marshals hired pursuant to the order. The case was tried to the court sitting without a jury and resulted in a judgment declaring that the order to hire the two additional deputy marshals was valid and enforceable and that the board of supervisors was required to pay the salaries of the new personnel so hired.

In our view, the trial court correctly resolved the issue presented to it for decision, and so the judgment is affirmed.

### FACTS

The controversial order of February 24, 1975,[1] signed by Theodore G. Krumm, the Presiding Judge of San Bernardino County Municipal Court District on behalf of the Council of Supervising Judges, ordered the marshal to hire two additional deputy marshals under the provisions

---

[1] A copy of this order is attached as an Appendix.

of sections 72150[2] and 72151 of the Government Code and authorized the marshal "to obtain all necessary equipment he determines is necessary in connection with their assigned duties." In its preamble the order recited that the Council of Supervising Judges on February 19, 1975, had determined that an emergency existed in connection with the operation of the municipal court in the Valley and West Valley Divisions.

However, the order noted was actually the climax to a drama which had been developing for a year or so. In June 1974, the Judicial Council of the State of California, after conducting a review of the activities, records, and business of the San Bernardino Municipal Court District, recommended that two judgeships be added to meet the increasing caseload, one for the Valley Division and the other for the West Valley Division. Following this recommendation, the 1974-1975 proposed budgets of the municipal court district and of the marshal's office were amended to reflect these recommendations.

The board of supervisors supported the legislation necessary to create the two new judgeships but did not recommend provision for any additional supporting personnel, e.g., deputy marshals. The legislation creating the two new judgeships became effective January 15, 1975, and a judge was immediately assigned pro tem. to the Valley Division by the Judicial Council, pending appointment by the Governor of a new judge for that post. In order to provide a bailiff for the assigned judge, the marshal took a deputy out of the field who had been serving criminal and civil process. As a result, the number of unserved process continued to mount, reaching a total on March 31, 1975 (according to the defendants' brief), of 7,055, of which 2,049 were in the Valley Division.

This state of affairs plus the imminent need for a bailiff in the additional court provided for in the West Valley Division led the Council of Supervising Judges to make its finding of February 19, 1975, as follows: "The Council hereby finds that an emergency exists in that the following listed personnel are necessary to maintain existing and future court functions involving court service and security in view of the

---

[2]The February 24, 1975, order actually directs the marshal to hire two additional deputies pursuant to "Section 27150 [sic] and 72151, Government Code." However, section 27150 is not a viable statute; for several years it has been reserved for future legislation. Therefore, we assume, and the record on appeal supports our assumption, that the section numbers were inadvertently transposed and the order should have read ". . . Section 72150. . ."

authorization for two additional judges within the San Bernardino County Municipal Court District under provisions of Chapter 1299, 1973-74 legislative session: Two Deputy Marshals [¶] The Council hereby orders that pursuant to sections 72150 and 72151 Government Code, the Marshal is hereby authorized to immediately hire said personnel and to obtain all equipment that he determines is necessary in connection with their assignments."

Based upon such finding the Presiding Judge of the San Bernardino Municipal Court District issued the order of February 24, 1975, as already noted. Without elaborating on the exchange of written communications between the judges and the board of supervisors which followed, it can be shortly observed that the board took the position that the judges had no authority to order the hiring of the additional marshals and directed the auditor not to pay them if they were hired.

## NATURE AND SCOPE OF THE JUDGMENT

The trial involved essentially a legal determination, and the findings and judgment are here paraphrased in part to provide a predicate for discussion of the issue presented. In addition to reflecting the factual synopsis above, the findings included a specific finding which amplified the emergency finding of the Supervising Council of Judges.[3] A further finding stated that: "The Board of Supervisors of the County of San Bernardino, Robert A. Covington and John Bulmer, Auditor-Controller for the County of San Bernardino, will continue to interfere with the lawful orders of the aforesaid Municipal Court District unless enjoined by this Court."

Based upon written findings of fact and conclusions of law, the judgment, as to its declaratory relief portions, recited:

[3]The full text of finding No. 8 reads: "That at the time of the issuance of the aforesaid orders of the Council of Judges and Presiding Judge of the San Bernardino County Municipal Court District, an emergency existed in said Court District within the meaning of Section 72150 of the Government Code because of the steady increase of the case load in the district, the rapidly increasing number of unserved process in the Valley and West Valley Divisions of the Court, and an insufficient number of deputy marshals within the district to permit the permanent assignment of two deputy marshals from the currently authorized number of deputy marshals to act as bailiffs for the two newly created and authorized judicial positions of the Court. It is further true that the aforesaid emergency in said Court is continuing and is seriously interfering with the function and efficiency of the Court, and will continue to do so until two additional deputy marshals are assigned to duty as bailiffs in the two newly created judicial posts in said district."

"d. That the order of the Council of Supervising Judges of the San Bernardino County Municipal Court District, issued on the 19th day of February, 1975, and the order of the Presiding Judge of said Court, issued on February 24, 1975, are valid and enforceable orders of said Court issued pursuant to the authority of Sections 72150 and 72151 of the Government Code of the State of California. Said orders were based upon the increase of business of said Municipal Court District, which constituted an emergency within the meaning of Section 72150 of the Government Code." The judgment recited further that:

"e. The emergency in said Municipal Court District has continued to exist in said Court at all times since the issuance of the orders of the Judges of said Court on February 19 and February 24 of 1975, and will continue to exist until the Marshal of the San Bernardino County Municipal Court District appoints two deputy marshals to act as bailiffs for the two additional judicial positions in said Court District provided for by Chapter 1299 of the 1973-74 session of the California State Legislature.

"f. The Judges of the San Bernardino County Municipal Court District in issuing their orders of February 19 and 24, 1975, acted in accordance with the judicial powers vested in them by Sections 72150 and 72151 of the Government Code. The Judges of said Municipal Court District were not required to first request the California State Legislature, which was then in session, to provide by statute for the two additional deputy marshals needed in said Municipal Court District to meet the emergency within the Court, before exercising the judicial power vested in them by Sections 72150 and 72151 of the Government Code."

Otherwise, as to the cross-complaint, the petition for a writ of mandate was denied, but the plaintiff, together with Robert A. Covington, Administrative Officer of the County of San Bernardino, and John Bulmer, Auditor-Controller of the County of San Bernardino, was enjoined from interfering with the San Bernardino County Municipal Court District's efforts to deal with the emergency which had been found to exist.

The plaintiff here appealed from all portions of the judgment "save and except that portion of the judgment fixing and ordering payment of [defendants'] attorneys' fees."

### Discussion and Disposition

■ The legal issue presented by this appeal, stated in its simplest terms, is whether section 72150 of the Government Code[4] empowers a judge of the municipal court under certain conditions to order the marshal to hire additional deputies. If it is determined that such authority exists, then it would seem to be axiomatic that the county would be bound to pay their salaries.

The resolution of this issue necessarily requires a consideration of the relationship of section 72150 and certain provisions of the California Constitution, particularly: section 5, article VI, as added in 1966, which specifies, "The Legislature shall provide for the organization and prescribe the jurisdiction of municipal and justice courts. It shall prescribe for each municipal court and provide for each justice court the number, qualifications, and compensation of judges, officers, and employees."

Before addressing the issue as we see it presented, it is proper to state what we are not deciding. The defendants in their brief suggest that ". . . section 72150 sets forth a power long recognized in the state of California, as well as the other states of the United States, as inherent in a court of record as an independent, equal and coordinate branch of government." Defendants then lead us through a collection of cases which deal with the inherent powers of an independent judiciary. In our view, a resort to the doctrine of inherent powers of the judiciary is not necessary to a decision in this case. The defendant judges purported to act under a specific statute, and it therefore seems plain that no issue of inherent power is involved. If section 72150 were not on the books, and if the judges had made the order they did, then an issue of inherent power would have been presented. That is not this case.

Turning then to a discussion and resolution of the issue as above defined, it is first appropriate to consider the novel theory suggested by the plaintiff, a theory which would have us, by judicial fiat, hold that

---

[4]Section 72150 of the Government Code reads: "If an increase in business of any municipal court or other emergency requires a greater number of employees for the prompt and faithful discharge of the business of the court than the number expressly provided by law, or requires the performance of duties of positions in the lowest salary bracket where all such positions have been filled, with the approval of the judge or judges, the clerk or the marshal of the court, or both, may appoint as many additional deputies as will enable them to promptly and faithfully discharge the duties of their respective offices."

section 72150, "in light of the changed circumstances" since it was enacted, should no longer be applied according to its plain and unambiguous language. Plaintiff, in advancing its theory, points to the halcyon days earlier in the century when the Legislature met only every other year and then for relatively restricted periods. Under those circumstances, the emergency provisions of section 72150 were designed, according to plaintiff's theory, to serve the needs of the courts in dealing with the pastoral and leisurely pattern of state government. However, now that the tempo of life has quickened and we have a full-time professional Legislature, plaintiff argues that there is no reason to repose in the judges the emergency power to hire additional personnel as provided for in section 72150.[5] There is said to be no reason to do so because it is arguably a simple matter now to hustle up to Sacramento and there to request and receive whatever is needed to cope with the emergency. In short, by viewing the language of section 72150 in "historical perspective" we are invited to ignore it because its enactment occurred at a time when the present hectic functioning of government, particularly the courts, was not only unheard of but undreamed of.

All of this is rationalized on the altar of legislative intent and sanctioned through the invocation of *Silver* v. *Brown,* 63 Cal.2d 841, 845-846 [48 Cal.Rptr. 609, 409 P.2d 689], "The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole. [Citations.]" The *Silver* case here cited was the sequel to the celebrated decision of similar caption (*Silver* v. *Brown,* 63 Cal.2d 270 [46 Cal.Rptr. 308, 405 P.2d 132]; hereafter *Silver I*). Both were written by Chief Justice Traynor. *Silver I* confirmed the invalidity of the 1961 apportionment of the Senate and Assembly, directing another legislative effort at the job in time for the 1966 elections. The latter *Silver* case (hereinafter *Silver II*) dealt with the Supreme Court's treatment of the results of the second legislative effort at apportionment which followed *Silver I*. Specifically, the petitioners sought a writ of mandate to obtain another reapportionment of both houses of the state Legislature for the reason that the

[5]Both sides, in addressing section 72150, have argued from a position which assumes an affirmative power vested in the judges. However, the literal language of the statute says that the clerk or the marshal may make the appointments with the approval of the judge or judges. Theoretically, it could be argued that the role of the judges here is passive only. However, we see that to be an unrealistic interpretation. As a consequence, our opinion proceeds upon the assumption that the statutory language also contemplates the possibility that the judges themselves, within their power to approve, may also take the initiative in bringing about the emergency appointments.

second effort was also claimed to be constitutionally defective. The Supreme Court in *Silver II* did not agree with the substantive contentions and discharged the alternative writ. However, it did proceed to order six corrections in chapter 3 of the legislation challenged. These corrections were made to clarify prose descriptions of the boundaries of certain legislative districts. For instance, the description of the 76th Assembly District in San Diego County had been drafted on the erroneous assumption that University Avenue and La Mesa Boulevard are the same street. This error was one which was corrected by the decision in *Silver II,* and it was in this context and with reference to this kind of defect in the legislation that the language above quoted was used. In our view, the problem which confronted the Supreme Court in *Silver II* is not the problem here to be resolved.

There is another answer to plaintiff's theory that section 72150 is no longer applicable because of the passage of time and a consequent change in the scene which plaintiff views as having called forth such legislation. In the record which plaintiff incorporates as a part of its argument of the appeal, it is represented to us that "These provisions [§§ 72150 and 72151] have been in the law in essentially the same language since enacted as a part of Chapter 358 of the 1925 Statutes. . . ." Plaintiff states further that "The only amendments since that time relate to the salary to be paid and to providing the possibility of one reappointment under these provisions." In these representations to us the plaintiff is in substantial error.

A line-by-line scrutiny of chapter 358 of the 1925 Statutes does not reveal even by implication the creation of the emergency power of appointment now reposed in section 72150. (Stats. 1925, ch. 358, p. 648.) According to our research, such power was not vested in the clerk or the marshal until 20 years later by chapter 49 of the 1945 Statutes. (Stats. 1945, ch. 49, p. 366.) In 1949, by chapter 1064, certain language was added not germane to the issue here. (Stats. 1949, ch. 1064, p. 1969.) In that same year, by section 35 of chapter 1510, this power, vested four years earlier in the clerk or the marshal, was for the first time made subject to the "approval of the judge or judges." (Stats. 1949, ch. 1510, p. 2681.) In 1951 chapter 1296 was enacted to amend a number of sections of the Municipal and Justice Court Act of 1949. Although it purported to amend section 35 (which is the language here under discussion), there was no actual change in the substance thereof. The amendment was only to delete the word "herein." (Stats. 1951, ch. 1296, p. 3181.) Section

72150 of the Government Code was enacted in its present form in 1953 as part of chapter 206. The key provisions of the statute as amended in 1953 are the same as contained in the 1951 version, but the wording was rearranged to improve the diction. (Stats. 1953, ch. 206, p. 1238.)

With this the legislative evolution of section 72150, the plaintiff's bid here that we consider its language in "historical perspective" turns out to be little less than picturesque. It can hardly be argued seriously that California had a horse-and-buggy Legislature in 1945 when this provision was first enacted. However, it was still a part-time Legislature in those days, and so what if we were to consider plaintiff's theory of obsolescence based upon a 1945 enactment rather than one in 1925? Such consideration requires us to point out that the subject matter of this section was considered by the Legislature twice in 1949, again in 1951, and again in 1953 when the present sectioning of this portion of the Government Code was accomplished. In the face of all of these opportunities for the Legislature to dispense with this emergency power, it would not even occur to the most eager of activist appellate courts which has ever undertaken to torture the language of a statute to serve some self-styled enlightened purpose that there was here a legislative intent that the language of section 72150 meant something other than what plain English says. Certainly, we are not about to do so.

Plaintiff argues otherwise that section 72150 should not be construed as authorizing the judges to invoke its provision unless the Legislature has first been afforded an opportunity to consider the staffing needs of the court and has declined to respond to those needs. Much is made in the record and the briefs that the "defendants made no attempts [*sic*] whatsoever, either through appearance, personal contact, or correspondence, to persuade the Legislature . . . that two additional deputy marshal positions were needed." Such argument proceeds from plaintiff's view of the effect to be given to section 5, article VI, of the California Constitution, already noted, which specifies that the "Legislature . . . shall prescribe for each municipal court . . . the number . . . of . . . officers, and employees." The short answer to that contention is that the Legislature itself enacted section 72150 and within the constitutional prescription thereby provided a specific mechanism for the staffing of municipal courts under emergency circumstances.

Plaintiff argues further that the municipal court is unique in terms of its status in the hierarchy of state courts in that the Constitution reserves

to the Legislature the power to prescribe its personnel while yet relegating it to a position of a local or county court with only county as distinguished from state employees. Without providing us with a logical predicate by which these two characteristics affect the issue, plaintiff would persuade us that they justify the withholding of the application of section 72150. Its contentions here are without substance and are not persuasive.

Having dealt with the plaintiff's contentions, we turn now to the affirmative task of disposing of the issue as earlier defined. Plaintiff agrees that the defendant judges purported to act under the authority of section 72150 and observes further that the "[i]nterpretation of a statute not previously subjected to judicial scrutiny is involved, and that judicial interpretation may well include examination of the constitutional parameters of the separation of powers concept. . . ." More cogent, as we see it, is the plaintiff's further observation that the "present problem is symptomatic of a growing unrest and increasing disputation between the trial courts of the State and the boards of supervisors of the various counties who must provide the funds necessary for the support of the courts." Plaintiff correctly observes further that this growing unrest "is fueled in part by the tax rate limitations imposed on counties by Chapter 1406 of the 1972 Statutes and fanned by the ambivalence of both the courts and the State Legislature, each of which in practice treats the municipal courts as state courts for some purposes and local or county courts for others." It is in these observations that we find the rationale for the current and compelling need for the application of section 72150 precisely according to its own wording.

Section 72150 has been on the books essentially in its present form since 1949, and that it has not until now been the subject of judicial interpretation suggests either that the judges of the municipal courts have exercised great restraint in their resort to the use of the emergency powers contained in the statute or that the state and local government scenes are now plagued by a new stress hitherto not experienced by either. We suspect it is the latter, and this new stress is the increasing cost of government at a rate which is wholly disproportionate to the increase in population. For years, local government in California, especially school districts, enjoyed a partisan-like support from the majority of local taxpayers, people who liked to point with pride to the excellence of their schools and other local institutions and services. Such is hardly the picture anymore. There is not enough tax money to go around as the cost

at all levels of government mushrooms. Now the majority of local taxpayers, who are also state taxpayers, are in a surly mood, resentful of the high taxes they pay as against what they see as a decline in the availability of local government services and the quality of education. This mood is one to which the elected representatives on city councils, on boards of supervisors, and in the state Legislature readily respond. Thus it is here. The judges have said that they need two more deputy marshals and the board of supervisors has balked at the increased cost.

Given the classic separation of powers which has been the hallowed mold of government at all levels in this country for two centuries now, it seems to us that the significance and utility of a statute like section 72150 is indeed timely and substantial. Simply stated, under our tripartite system, the legislative branch compiles the budget for all three branches of government and imposes the taxes to fund that budget. The executive branch then collects the taxes and disperses them in accordance with the authorizations in the budget. Thus it can be seen at once that it would be possible for the legislative branch and/or the executive branch, acting either together or separately, literally to cut off the judicial branch at the pockets.

Aside from any inherent powers which courts may have as a matter of preserving their viable function, we have here a statute which contemplates the possibility of circumstances developing which would put the courts in a position where they would have to take unilateral action if they were to continue to operate. It seems to us, while recognizing the initial contention of plaintiff that the intent of the Legislature in enacting section 72150 was only to enable the courts to deal with a part-time Legislature, that the need for such a statute is far more demonstrable today than when it was first enacted. Never has hostility toward the courts run higher among our citizenry. Whatever the reasons, this hostility is in turn reflected by the attitudes, at least expressed attitudes, of many legislators at all levels.

Accordingly, if the most important court in the state in terms of the numbers of citizens it serves, the municipal court, is to continue effectively to function as a forum for the orderly settlement of civil disputes and the prosecution of the floodtide of petty crime, then its own judges should have the power themselves to staff their operation when emergency conditions arise and go unheeded by the Legislature. As noted at the outset, we need not wrestle with whether this is an inherent

power; the Legislature in its wisdom of an earlier day placed a statute on the books which confers on the judges the power they need to cope with "an increase in business . . . or other emergency. . . ." Nothing has been alluded to in the record or in the briefs which in our view represents either a legal or logical reason why section 72150 should not be available to the judges today exactly according to its terms.

The judges in this instance made the appropriate finding of emergency, and we agree with the trial court that the order of February 24, 1975, is valid and enforceable.

The judgment is affirmed.

Gardner, P. J., and Kaufman, J., concurred.

---

APPENDIX

In the San Bernardino
County Municipal Court
District

ORDER

County of San Bernardino
State of California

The Council of Supervising Judges having determined on February 19, 1975 that an emergency exists in that two additional deputy marshal positions are necessary at this time in order to provide properly trained personnel for the new judgships authorized at Valley and West Valley Divisions under Chapter 1299, 1973-1974 legislative session;

It is hereby ordered that the Marshal proceed to hire two additional deputy marshal positions under provisions of Section 27150 and 72151, Government Code. The Marshal is further authorized to obtain all necessary equipment he determines is necessary in connection with their assigned duties.

Dated: February 24, 1975

THEO. G. ____, Presiding Judge
San Bernardino County
Municipal Court District