[Civ. No. 63264. Second Dist., Div. Four. Oct. 27, 1982.]

THE MUNICIPAL COURT FOR THE ALHAMBRA JUDICIAL
DISTRICT OF LOS ANGELES COUNTY et al.,
Plaintiffs and Appellants, v.
MARK H. BLOODGOOD, as Auditor-Controller, etc.,
Defendant and Appellant.

Gibson, Dunn & Crutcher, Richard Chernick, Hermia S. Shegog, James A. Smith, Stroock & Stroock & Lavan and William H. Levit for Plaintiffs and Appellants.

John H. Larson, County Counsel, Edward G. Pozorski and Tighe F. Hudson, Deputy County Counsel, for Defendant and Appellant.

OPINION

**KINGSLEY, J.**—The county-auditor (Bloodgood) appeals from a judgment in favor of plaintiffs, respondents and cross-appellants—each of the 24 separate municipal court districts in Los Angeles County—and against defendant, appellant, and cross-respondent Mark Bloodgood, Auditor Controller of the County of Los Angeles.

The court below found that respondents properly hired independent counsel pursuant to their inherent power and pursuant to Government Code sections 27647 and 27648 which authorize municipal court judges to hire counsel when they would have been entitled to representation by county counsel but where county counsel has a conflict of interest. The court below also found that appellant was required to pay the reasonable value of the services, costs and expenses of "independent" counsel in connection with actions taken or threatened by the county. The lower court found also that appellant judges were required to pay the reasonable value of the services, costs and expenses of counsel in connection with the lawsuit brought to enforce their rights.

The complaint was for declaratory relief. The court gave the judges a money judgment against the County of Los Angeles.

This action arose during the period immediately following the qualifications of the Jarvis-Gann property tax initiative, Proposition 13. The board of supervisors instructed its chief administrative officer, Mr. Harry Hufford (the CAO) to prepare a report and a contingency budget. The CAO solicited program eliminations for each department and his report provided for a reduction plan affecting the courts. A presiding judge wrote a response to the memorandum stating that all functions of the municipal courts are statutorily and constitutionally mandated and cannot be eliminated. The board adopted a hiring freeze. The CAO issued an alternative budget which was commonly known as the doomsday budget. The CAO's alternative budget proposed certain reductions. According to the CAO, these reductions would have the following impact:

(1) Consolidation of all municipal court districts;

(2) Virtual elimination of civil calendars;

(3) Elimination of small claims court cases;

(4) Cutbacks on the criminal misdemeanor calendar;

(5) The closure of 22 separate courthouses; and

(6) The resulting violation of several provisions of the Code of Civil Procedure, Penal Code, and constitutional guarantees of due process.

In addition to concern by the judges over freezes on hiring and on promotions of county employees, there was some confusion over this document itself, since the court employees are not county employees. The judges were concerned that the county had no authority to cut the employees of the court, since the employment is prescribed by state statute.

Although the courts would have been entitled to be represented by county counsel (Gov. Code, § 27647), the judges believed that the primary duty of county counsel was to represent the board in the event of a dispute between the board and the courts. In previous disputes between the municipal court districts and the board involving the marshal's budget and the adequacy of court facilities, wherein county counsel already had advised the board the county counsel declined to represent the respondent courts. Also, county counsel had represented the board as to the legality of the alternative budget.

Before the CAO presented the alternative budget to the board, the deputy county counsel reviewed it. He advised the board that it had legal authority to consolidate municipal court districts and to reduce the appropriations to the level of available property tax. The board proposed a 58 percent reduction in funding for the courts.

The judges, who are not permitted to practice law, sent a letter to county counsel informing them of their immediate need for counsel, requesting a prompt reply. The judges wrote they were requesting counsel ". . . by your office, or, if you cannot undertake such representation . . . that you so indicate . . . so that available alternative action may be promptly pursued." The judges appointed private counsel to represent them.

In an order appointing private counsel dated May 30, 1978, the Alhambra Judicial District declared a conflict of interest of county counsel. Other districts including Los Angeles issued similar orders declaring a conflict of interest and ordering the employment of private counsel to represent the courts.

I

■ Bloodgood argues that the municipal courts may not expend funds to procure the services of a private attorney, and to do so was a violation of the separation of powers doctrine. He argues that the adoption of the budget for the municipal courts is a legislative function properly belonging to the board of supervisors and not to the judiciary.

Although he is correct that the judiciary does not have control over budgetary matters, and this legislative function properly belongs to the board of supervisors (*Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 235 [138 Cal.Rptr. 101]) the judges here were not by their actions engaged in the adoption of a budget or preparation of a budget. They merely hired a private attorney, under authority of the Government Code, to represent them and were not attempting to propose or to adopt a budget. While it is true that certain budgetary problems may have directly arisen out of the act of hiring private attorneys, that is, that there may be problems and adjustments eventually that must be made by the board of supervisors in the budget in order to pay for those private attorneys, we cannot say that the judges were, by their actions, engaged in adopting a budget. Any direct or indirect effect of their actions was merely a peripheral *result* of their actions in seeking private representation and their actions in hiring the private attorneys were not budgetary or legislative actions in and of themselves. The judges' actions were not in any way an attempt to "adopt a budget," but were merely an attempt to seek legal representation. Thus, there was no violation of the doctrine of separation of powers.

## II

Bloodgood also argues that it is the board of supervisors that has the duty of providing attendants and suitable quarters for the courts (Gov. Code, § 68073; see *Simpson* v. *Hite* (1950) 36 Cal.2d 125 [222 P.2d 225]) and if the board of supervisors fails to so provide, the courts must follow the statutory remedy set forth in Government Code section 68073.[1] Although section 68073 sets forth one remedy for the court or judges where the board fails to provide courtrooms and attendants, nothing in that statute suggests that the court has no other remedy or that section 68073 is either exclusive or mandatory.

## III

Bloodgood argues that the courts may not act to secure their physical necessities until there is an actual deprivation, and that the future and anticipated deprivation or a threat to the courts that occurred here was not suffi-

---

[1]"In each county the board of supervisors shall provide suitable rooms for holding the superior, municipal and justice courts, for the chambers of the judges of said courts and for court attendants, together with sufficient attendants, heat, light, furniture, furnishings, equipment, stationery, supplies, and other personal property for said rooms and chambers and for the transaction of the business of the courts. . . .

"If the Board of Supervisors of any county does not provide suitable rooms for holding the chambers of the judges of said courts and for the court attendants, together with sufficient attendants, furniture, furnishings, heat, light, equipment, stationery, supplies and other personal property, for said rooms and chambers and for the transaction of the business of the courts, the courts or the judge or judges of such courts may direct the Sheriff of the county to provide the same. The expenses incurred in providing the same, certified by the judge or judges to be correct, are a charge against the county treasury, and shall be paid out of the general fund. . . ."

cient. He relies on an 1892 case which held that the court or judge may not take out of the hands of the board of supervisors the furnishing of an unfinished room in the courthouse, in anticipation that the courtroom would be finished before the furniture arrived. (*County of Los Angeles* v. *Superior Court of Los Angeles County* (1892) 93 Cal.380, 383 [28 P. 1062].)

First of all, the 1892 case dealt with the mere furnishing of a courtroom, and it did not include the type of emergency that the judges reasonably thought the courts of the state were facing as a result of Proposition 13 and the proposed alternative budget. Secondly, the situation at bar did not involve a "mere supposition" that something would not be done as the appellate court had found to be the situation in the 1892 case. In the case at bar the threat to the courts appeared imminent and pervasive. Although in retrospect the courts may not have been actually facing the degree of danger that the courts appeared to be facing at the time the judges sought legal representation, the judges had every reason to believe that the courts would have been unable to function if the proposed alternate budget were to be adopted. The lower court found that a hiring freeze and promotion freeze was threatened that would affect the courts' statutory functions. Although the fiscal effects of Proposition 13 were not realized until July 1, 1978, and the $5 billion from the state Legislature was returned to local agencies (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 310, 311 [152 Cal.Rptr. 903, 591 P.2d 1]), the courts below found that a threat to the courts did exist at the time the judges sought private legal advice. Mr. Dixon, chief of the county's budget division, was the author of a memorandum soliciting "program eliminations." This memorandum, together with the inference that must be drawn from the proposed budget, making drastic cuts, were more than sufficient reason for the judges to believe the courts would be unable to fulfill mandated functions.

Therefore, there was substantial reason for the judges to believe that an imminent threat to the courts existed. That threat cannot be compared with the situation that was before the court in the 1892 case.

IV

Bloodgood argues that in the case at bar the theory of inherent power is inapplicable. Bloodgood argues that, since the courts made their particular orders under the authority of Government Code section 27648, resort to any theory of inherent power is unnecessary and not an issue.

In *Board of Supervisors* v. *Krumm* (1976) 62 Cal.App.3d 935 [133 Cal.Rptr. 475] defendant judges hired two deputy marshals under Government Code section 72150, and the defendants judges therein also attempted to invoke the inherent powers of the court to support their action. The court held that resort to

the inherent powers of the judiciary was not necessary where the judges purported to act under a specific statute. (At p. 941.) While it may be true in the *Krumm* case that resort to the inherent power of the judiciary was not necessary where the judges purported to act under a specific statute, and that is also true in the case at bar, we do not hold here that such an inherent power does not exist in the case at bar. We are simply holding here, (as the appellate court held in the *Krumm* case) that we need not decide whether the judges herein also had an inherent power to hire private counsel, where the judges purported to hire counsel under a specific Government Code section. (§ 27648.)

V

■ Bloodgood argues that the judges were not entitled to hire private counsel under Government Code section 27648, because there was no *declared* conflict of interest.

Section 27647 provides that the county counsel may represent the municipal courts if requested to do so, if the representation does not conflict with or interfere with other duties. Section 27648 creates a right in judges for reimbursement of reasonable fees necessarily incurred if there is "declared conflict of interest."[2]

■ Bloodgood argues that only county counsel may "declare" such a conflict of interest, and that if the judges could make such a declaration, that in effect, makes the court a guardian of the "County coffers" and the courts are not guardians of the county coffers. (*Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 842 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391].) ■ While we agree that it is not the court's role to be the guardian of the county treasury, it certainly does not follow therefrom that the judges may not declare a conflict of interest under the code section, or that only the county counsel can declare a conflict of interest. First of all, nothing in the language of section 27648 indicates that only the county counsel may declare a conflict of interest. We can

---

[2]Government Code section 27647: "(a) If requested so to do by the superior court of which he is county counsel, or by any municipal court or justice court in such county, or by any judge thereof, and insofar as such duties are not in conflict with, and do not interfere with, his other duties, the county counsel may represent any such court or judge thereof in all matters and questions of law pertaining to any of such judge's duties, including any representation authorized by section 68111 and representation in all civil actions and proceedings in any court in which with respect to the court's or judge's official capacity, such court or judge is concerned or is a party. [¶] (b) This section shall not apply to any of the following: [¶] (1) Any criminal proceedings in which a judge is a defendant. [¶] (2) Any grand jury proceedings. [¶] (3) Any proceeding before the Commission on Judicial Qualifications. [¶] (4) Any civil action or proceeding arising out of facts under which the judge was convicted of a criminal offense in a criminal proceeding."

Government Code section 27648: "If, because of a declared conflict of interest, any judge, who is otherwise entitled to representation pursuant to Section 825, 995, or 27647, is required to retain his own counsel, such judge is entitled to recover from the appropriate public entity such reasonable attorney's fees, costs, and expenses as were necessarily incurred thereby."

not read language into a statute that is not there. ■ The courts may not disregard or enlarge the plain provisions of a statute, nor may they go beyond the meaning of words used when they are clear and unambiguous. (*Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1 [125 Cal.Rptr. 408].) ■ Secondly, such a limitation, in the absence of express language creating such a limitation, would be inconsistent with a patent purpose of the statute. An obvious purpose of Government Code section 27648 is to permit a judge to obtain legal representation in matters of law pertaining to the judge's duties, when a county counsel cannot properly represent that judge due to a conflict of interest. It would seriously circumscribe that purpose of the statute, (to grant judges legal representation) if only the county counsel, and not also the judges, could declare such a conflict of interest. Since one clear purpose of the language is to provide legal representation to judges, and not merely to protect the county counsel from representing judges where there is a conflict of interest, it would be inconsistent with that purpose to limit declaration of conflict of interest to the county counsel alone. We hold that under Government Code section 27648 judges may declare a conflict of interest.[3]

■ Further, the American Bar Association Rules of Professional Conduct place the right to decide whether an attorney will undertake to represent a client with the client. An attorney may not acquire an interest adverse to client without the client's consent (rule 5-101(A)) nor may an attorney represent conflicting interests without the consent of all concerned (rule 5-101(B)). Clients must be free to make decisions after disclosure of all facts. (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 147 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) In the case at bench, the judges were the client.

■ It is clear from the record that the judges actually declared a conflict of interest. While the letter itself that was sent to county counsel by the representative judges did not spell out the conflict of interest in express language nor did the letter use the phrase "conflict of interest," it is clear from county counsel's reply letter, that the county counsel knew that the judges' letter to him was alluding to a conflict of interest. The judges wrote that if county counsel could not provide representation they should indicate that promptly, and county counsel's response indicated that he knew the judges were referring to conflict of interest.

Furthermore, the various orders made by the courts appointing private counsel (mostly made by the judges at the end of May and the beginning of June) specifically stated that the courts were hiring private counsel due to a "conflict of interest."

---

[3]Whether or not the county counsel may also declare a conflict of interest is not a question before us.

## VI

■ Bloodgood argues also that there was no real conflict of interest. The court below correctly found that there was such a conflict of interest. The county counsel's primary duty was to advise and represent the board of supervisors and county counsel had represented the CAO in connection with the preparation of the contingency budget. Also, the county counsel had given an opinion on municipal court consolidation.[4] This representation of the board of supervisors in matters pertaining to the very cut in budget that was believed to seriously affect the court was sufficient to support the trial court's finding that there was a conflict of interest.

## VII

Bloodgood argues that the purpose of the rule against dual representation of conflicting interests is merely to prevent an attorney from placing himself in a position to receive confidential communications and the confidences of his clients, and appellant argues that since the budgetary matters are open to public scrutiny, the reason for the rule does not exist here. However, there are other reasons for the prohibition against a lawyer representing conflicting interests. Dual representation is prohibited when counsel's independent judgment is affected due to a conflict of interest among clients. (See *Kraus* v. *Davis* (1970) 6 Cal.App.3d 484 [85 Cal.Rptr. 846]; *Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6, 10 [136 Cal.Rptr. 373].) In the case at bar, Mr. Dixon had consulted with a deputy county counsel on the doomsday budget, and the county counsel sent a letter advising the CAO and the board that budget cuts could be made affect-

---

[4]The court found: "The Los Angeles County Counsel was in a position of conflict of interest as to each of the 24 Municipal Court Districts in April, May, and thereafter, of 1978, in connection with the [action taken and threatened by the County and the Board]:

"(a) County Counsel's primary duty was, at all times, to advise and represent the Board of Supervisors and its agents rather than [respondents].

"(b) County Counsel is bound by applicable rules of professional conduct and ethical precepts from representing conflicting interests or potentially conflicting interests.

"(c) County Counsel had, prior to May 16, 1978, consulted with and advised representatives of the Chief Administrator's Office in connection with the preparation of a contingency budget for the ensuing fiscal year. This action was at the direction of the Los Angeles County Board of Supervisors. Said budget recommended one or more of the actions [taken and threatened by the Board].

"(d) County Counsel was further in a position of conflict of interest with [respondents] vis-a-vis the County of Los Angeles by virtue of his opinion dated July 22, 1977 re Municipal Court consolidation [Exh. 8, C.T. 1272] which conflicted with the opinion of Legislative Counsel of California dated March 9, 1978 [Exh. 9, C.T. 1285].

"(e) Such circumstances ethically and legally precluded County Counsel from advising or representing [respondents].

"(f) Los Angeles County Counsel had a legal and ethical duty promptly to advise [respondents] of his inability to advise or represent them when [respondents] first sought advice and representation."

ing the court and that the courts could be consolidated. Thus county counsel had advised the board in relation to the legality of the alternative budget. The interests of the clients herein (the judges and the board) are conflicting and antagonistic and the court properly found that there was a conflict of interest within Government Code section 27648.

## VIII

■ Bloodgood argues that if a potential conflict of interest prohibited county counsel from advising the municipal courts, the same considerations also prohibited the representation of *all* municipal court districts by Gibson, Dunn & Crutcher and James A. Smith. He argues that there also existed just as great a potential conflict of interest between individual municipal court districts, which would preclude Gibson, Dunn & Crutcher and James A. Smith from representing more than any one municipal court district. He raises the issue for the first time on appeal, and we need not consider it further. (See *Sommer* v. *Martin* (1921) 55 Cal.App. 603 [204 P. 33].) Secondly, the judges gave written consent to their joint representation in the form of separate orders appointing the private counsel. These orders, which were signed by each of the presiding judges, are sufficient to show consent.

## IX

■ Bloodgood argues that if the courts truly needed legal representation, they were required to follow the procedure set forth in Government Code section 31000. Section 31000 reads in part: "The Board of Supervisors may contract for special services on behalf of the following public entities: the county, any county officer or department, or any district or court in the county. Such contracts shall be with persons specially trained, experienced, expert and competent to perform the special services. . . . The special services shall be in the financial, economic, accounting . . . engineering, legal, medical, therapeutic . . . . The Board may pay from any available funds such compensation as it deems proper for these special services. . . ."

Bloodgood points to *Phillips* v. *Seely* (1974) 43 Cal.App.3d 104 [117 Cal.Rptr. 863], for the proposition that courts may not contract merit services at the public expense unless the Legislature has authorized the courts to do so by statute, arguing that section 31000 is the relevant statute. However, in the case at bench the Legislature has authorized the courts to contract for the services of an attorney under Government Code section 27648. Section 31000 is not exclusive and the judges could properly hire private attorneys under section 27648.

X

 Bloodgood argues that the services that the judges sought were political, not legal. Even if there were political overtones in the judges' request for legal services (a matter we do not decide), that in no way negates the fact that the judges sought legal advice in a matter of law pertaining to judges' duties. This situation clearly falls within the relevant Government Code sections creating a right of reimbursement for legal services, and the fact that there were or were not also political ramifications in no way negates respondents' rights to legal services under the statutes.

XI

 Bloodgood argues that the case at bar involves an improper use of declaratory relief since the cause of action was essentially for money due and owing. He argues that it was improper to use declaratory relief when the remedy at law is adequate. Declaratory relief is not exclusive or extraordinary. (*Jones* v. *Robertson* (1947) 79 Cal.App.2d 813, 819-820 [180 P.2d 929].) Where plaintiff has a cause of action for breach of contract, and the relationship between the parties continues so that a lawsuit for breach of contract may not be speedy or adequate, a declaration may guide the parties in their future conduct, or declaratory relief may avoid a multiplicity of suits that ensue if a different remedy is pursued. (*Warren* v. *Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678, 683-684 [121 Cal.Rptr. 19].) In the case at bench denial of declaratory relief might have encouraged a multiplicity of litigation. Also there is a continuing relationship between the municipal courts and the county and declaratory relief was useful to guide future conduct. And finally, redress for past wrong may be had in an action for declaratory relief, and plaintiff may ask for a declaration of rights and duties, *either* alone or with other relief. (*Travers* v. *Louden* (1967) 254 Cal.App.2d 926 [62 Cal.Rptr. 654].) Thus it was not improper to grant money due and owing in connection with the declaratory relief and the declaratory relief action was proper.

XII

 Bloodgood argues that the courts are not the real party in interest because the lawyers to whom the money is owed could have brought the action. There may be more than one real party in interest under Code of Civil Procedure section 369. (3 Witkin, Cal. Procedure (2d ed. 1971) § 93, p. 1769.) In this case sections 27647 and 27648 expressly give the judges the right to recover attorney fees in an appropriate case. Thus, under those statutes, the judges are clearly a real party in interest. Furthermore, the judges were protecting their own interests against a possible claim by the attorneys that the judges

owe them money, and since they were protecting their own interests the judges were real parties in interest.

## XIII

■ Bloodgood argues that the conduct of counsel for the municipal courts violated Rules of Professional Conduct, rule 2-111(A)(4). Appellants argue that Mr. Chernick and Mr. Smith were counsel of record for plaintiffs when the action below was filed, even though they knew that testimony concerning the services they personally rendered would be required of them and would be a major factor in litigation concerning these services. First, other attorneys were substituted in the case.

Secondly, there is an exception under rule 2-111(A)(4) where the attorneys' testimony deals with the nature and value of legal services rendered. (Rule 2-111(A)(4)(c); *Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 912 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562].) The lawyers Chernick and Smith described their research, investigations and meetings that were required to be taken in connection with respondents' legal position, and thus appear to fall within this exception. If, in fact, these attorneys' testimony did not come within the exception, it was Bloodgood's obligation to cite us to the place in the record to show us which testimony violated rule 2-111(A)(4).

### Cross-appeal

■ Cross-appellant judges contend that the superior court erred in fixing reasonable attorneys' fees for respondents' primary litigation counsel (Mr. Levit) by limiting the reasonable value of his services to an amount determined by an agreement to which primary litigation counsel was not a party and which dealt only with prelitigation legal advice furnished by other counsel. Bloodgood counters by arguing that, except as specifically authorized by statute, the measure and compensation of attorneys' fees is left strictly to the agreement of the parties, (Code Civ. Proc., § 1021) and since the judges admit that the agreement for attorney fees did not include the lawsuit to enforce collection, their attorney, who handled the litigation, is not entitled to attorney fees. In other words, Bloodgood argues that there is no agreement between these particular parties as to attorney fees incurred in litigation and there was no statute granting attorneys' fees, and therefore the attorneys were not entitled to attorneys' fees at all as "prevailing parties" in the court below.

We do not here deal with attorneys' fees for attorneys who represent "prevailing parties." Although section 27648 does not authorize attorneys' fees to the prevailing party, section 27648 permits the judge to recover from the appropriate public entity such reasonable attorneys' fees, costs, and expenses as

were necessarily incurred thereby. The reasonable attorneys' fees that were incurred as a *result of litigation* certainly are fees that are "necessarily incurred thereby." Therefore, the judges are entitled to recover from the appropriate public entity the reasonable attorney fees for the litigation under authority of Government Code section 27648. That is, the judges are entitled to reimbursement for such fees since the litigation involved necessarily incurred attorneys' fees. Since section 27648 provides *for recovery of those fees by the judges* from the public entity and it does not provide for payment to the attorneys it was proper to award a sum for those fees to the judges.

We need not concern ourselves with whether or not section 27648 permits the judges to recover for attorneys' fees when they are a prevailing party in a lawsuit, since it is clear that that statutory language does not even deal with prevailing parties. It is unnecessary for the judges to resort to any theory of recovery based on being a prevailing party or based on a contract. It is Government Code section 27648 that permits a judge to recover those reasonable attorneys' fees as were necessarily incurred when the judge who was otherwise entitled to representation is required to hire his own counsel due to a declared conflict of interest.

In the case at bench Mr. Levit was primary litigation counsel, and since a litigation was necessary to properly represent the judges in a case where county counsel could not represent the judges, Mr. Levit's reasonable fees would be "necessarily incurred thereby." Thus, the judges were entitled to recover Mr. Levit's fees under section 27648 itself and resort to other statutes or a contract were unnecessary here.

We agree with the judges that the standard for recovery for Mr. Levit was that which is a "reasonable fee" and not any agreement between prelitigation counsel and the judges. (Gov. Code, § 27648.) The question therefore remains as to whether the court below properly used the same dollar amount ($98 per hour) that was agreed on as a proper fee for the initial prelitigation rate as a "reasonable fee" for Mr. Levit. In other words, was the *agreed upon* sum for prelitigation representation by Smith and Chernick also a *reasonable fee* for Mr. Levit.

The method for determining reasonableness of attorney fees has been clearly determined in contexts other than section 27648. In *Serrano* v. *Priest* (1977) 20 Cal.3d 25 at pages 48 and 49 [144 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*) the court set out the following standard: "Fundamental to [the] determination [of the reasonable fee award]—and properly so—[must be] a careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case."

"The value of an attorney's time generally is reflected in his normal billing rate. A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time—taking account of the attorney's legal reputation and status (partner, associate). Where several attorneys file a joint petition for fees, the court may find it necessary to use several different rates for the different attorneys. Similarly, the court may find that the reasonable rate of compensation differs for different activities." (*Lindy Bros. Bldrs. etc. of Phila.* v. *American R. & S. San. Corp.* (1973) 487 F.2d 161, 167.)

In *Serrano III,* the Supreme Court said the following factors should be considered: "(1) [T]he novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award." (*Serrano III, supra,* 20 Cal.3d at p. 49.)

In the case at bench the hourly rate of $98 bears no relationship to the compensation appropriate to Mr. Levit's work. In view of the fact that Mr. Levit's legal actitivites were different from the legal activities of Mr. Smith and Mr. Chernick, use of the hourly rate agreed upon by Mr. Smith and Mr. Chernick were inappropriately used. The case is reversed and remanded with instructions to the trial court to follow the guidelines set forth in *Serrano III.* (See *Werschkull* v. *United California Bank* (1978) 85 Cal.App.3d 981 [149 Cal.Rptr. 829].)

The judges allege they are entitled to prejudgment interest on the award of attorneys' fees from the county. We agree.

Code of Civil Procedure section 1033 reads in part: ". . . The clerk or judge shall include in the judgment, or any part of a judgment, entered up by him based upon a cause of action in contract where the claim was unliquidated, interest on the verdict or decision of the court from the date prior to the entry of judgment as may have been fixed by the court pursuant to subdivision (b) of Section 3287 of the Civil Code . . . ."

Civil Code section 3287, subdivision (b) states: "(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

The judges argue they are entitled to reasonable attorney fees, costs and expenses necessarily incurred in opposing this appeal and in bringing their cross-appeal. Under section 27648 the judge is entitled to recover nec-

essarily incurred reasonable attorney fees. Reasonable attorney fees incurred by the judges as a result of Bloodgood's appeal, and incurred in the cross-appeal are certainly "necessarily incurred" and therefore are recoverable under section 27648.

The judgment is reversed and remanded for the sole purpose of (1) awarding prejudgment interest; redetermining the fee to be awarded because of Mr. Levit's services; and (3) awarding a reasonable fee for the services of counsel for the judges on the present appeals. Otherwise the judgment is affirmed. The judges shall recover their costs on these appeals.

Woods, P. J., and McClosky, J., concurred.