TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-901 |
| of | : | |
| | : | May 28, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. When a county counsel takes a position in favor of the interests of the county board of supervisors and adverse to the interests of the sheriff, does a conflict of interest thereafter exist without the county counsel's declaration of such conflict so as to entitle the sheriff to legal representation in that matter by independent counsel?

2. Assuming a conflict of interest thereafter exists and independent counsel is to be retained in such circumstances, may the sheriff select the counsel and who would be responsible for the payment of attorneys' fees?

CONCLUSIONS

1. When a county counsel takes a position in favor of the interests of the county board of supervisors and adverse to the interests of the sheriff, a conflict of interest may, depending upon the individual circumstances, thereafter exist without the county counsel's declaration of such conflict so as to entitle the sheriff to legal representation in that matter by independent counsel.

2. Assuming a conflict of interest thereafter exists and independent counsel is to be retained in such circumstances, the sheriff may select the counsel and the county board of supervisors would be responsible for the payment of attorneys' fees.

ANALYSIS

The questions presented for resolution concern the ability of a county sheriff to retain independent counsel when the county counsel has taken a position adverse to the interests of the sheriff but has failed to acknowledge the existence of a conflict of interest. As an example, a dispute arises between a board of supervisors and the sheriff concerning the proper distribution of funds recovered from asset forfeiture proceedings involving convicted criminals. The dispute may result in litigation between the two

after the county counsel has advised them of their respective rights. If the sheriff is entitled to independent counsel under these circumstances, we are further asked whether he may make the selection of his legal representation and whether the county would be obligated to pay for it.

In answering these questions we will examine the powers and duties of a sheriff, the relationship of the sheriff's office to county government as a whole, and the role and obligations of the county counsel. As the request concerns a sheriff's need for and right to counsel in advance of any litigation which he may initiate, we do not analyze herein statutes that pertain to the obligation of the county to provide for the defense of civil actions or proceedings brought against a county officer in his official or individual capacity for acts or omissions within the scope of employment. (See Gov. Code, §§ 825, 995, 995.2, 996.4.) **Footnote No. 1**

1.        Undeclared Conflict of Interest

First, with respect to the office of the sheriff, the Constitution provides: "The Legislature shall provide for county powers, an elected sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county. . . ." (Cal. Const., art. XI, § 1, subd. (b).) In addition, the Constitution authorizes charter counties to have: "An elected sheriff, an elected district attorney, an elected assessor, other officers . . . ." (Cal. Const., art. XI, § 4, subd. (c).) For purposes of the issues presented herein, we may treat charter counties similarly to general law counties. (See *Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200, 1206-1208.)

A county public officer, such as sheriff (§ 24000, subd. (b)), has only such powers as have been conferred by law, expressly or by implication. (77 Ops.Cal.Atty.Gen. 242, 243-244 (1994) [county recorder]; 72 Ops.Cal.Atty.Gen. 51, 52 (1989) [county auditor]; 68 Ops.Cal.Atty.Gen. 223, 224 (1985) [county tax collector]; 65 Ops.Cal.Atty.Gen. 321, 325 (1982) [county recorder]; 62 Ops.Cal.Atty.Gen. 504, 508 (1979) [county tax collector].) "Because the sheriff . . . is a constitutional officer, his duties are of state-wide importance, a fact further cemented by the existence of myriad statutes regulating his duties." (*Beck* v. *County of Santa Clara*, (1988) 204 Cal.App.3d 789, 800.) The basic statutory scheme defining the powers and duties of a sheriff (§§ 26600-26778) expressly authorizes him to investigate public offenses and arrest and take before a magistrate all persons who have committed an offense. (§§ 26601, 26602; see 77 Ops.Cal.Atty.Gen. 82, 85 (1994).) Also, the sheriff "shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it. . . ." (§ 26605; see *Board of Supervisors* v. *Superior Court* (1995) 33 Cal.App.4th 1724, 1738-1739.)

With respect to the statutory duties of a county board of supervisors, section 23005 states: "A county may exercise its powers only through the board of supervisors or through agents and officers acting under authority of the board or authority conferred by law." (See 77 Ops.Cal.Atty.Gen., *supra*, 83.) The board of supervisors has specific oversight and budgetary authority with respect to the operations of the sheriff's office, as long as it does not obstruct the sheriff's investigative function. Section 25303 states:

"The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management, or disbursement of public funds. It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection.

"This section shall not be construed to affect the independent and constitutionally and statutorily designed investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff

of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county.

"Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff.

In 77 Ops.Cal.Atty.Gen., *supra*, 82, we were asked whether a board of supervisors could determine the manner in which the sheriff's budget allotment could be spent, including the manner in which personnel would be assigned. We stated:

"In our view, it is clear that control by a board of supervisors over the manner in which funds allocated to the sheriff and district attorney are to be expended, including the assignment of personnel, would impair the exercise by those officers of their constitutionally and statutorily defined powers. Such supervisory control would directly conflict with the admonition that `the board has no power to perform county officers' statutory duties for them or direct the manner in which duties are performed . . . .' (*Hicks* v. *Board of Supervisors*, *supra*, 69 Cal.App.3d at 242; see also *People* v. *Langdon* (1976) 54 Cal.App.3d 384, 388-390 [county clerk].) Consistent with the *Hicks* rationale, the Supreme Court has recently ruled that the supervisory authority of a board of supervisors over the county assessor is limited to ensuring the faithful performance of the duties of that office, and does not permit the board to control, directly or indirectly, the manner in which the duties are performed. (*Connolly* v. *County of Orange* (1992) 1 Cal.4th 1105, 1113, fn.9.)

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In sum, the distinction to be drawn is between the power of a board of supervisors to appropriate county funds and the power of a sheriff or district attorney to manage the expenditure of the funds so appropriated. The grant of authority given to a board of supervisors by the Legislature is unaffected by allowing the sheriff and district attorney to perform their constitutional and statutory duties. A board's specific responsibility to `provide for the number, compensation, tenure, appointment and conditions of employment of county employees' (§ 25300) is simply an inherent aspect of the preparation and adoption of the county's budget, which in turn is an indispensable prerequisite to a valid tax levy, a clearly legislative function. [Citations.] However, the budget process is integral and complete upon adoption of the budget; it does not encompass the management of budgetary resource allotments the responsibility for which is conferred by the Constitution or laws upon other county officers either expressly or by necessary implication. [Citations.] Consequently, a board's authority to provide `conditions of employment' (§ 25300) cannot be interpreted to confer ongoing control over the actions to be taken by personnel previously assigned to the sheriff or district attorney." (*Id*., at pp. 88-89.).

Recently in *Dibb* v. *County of San Diego*, *supra*, 8 Cal.4th 1200, the Supreme Court examined whether the board of supervisors of a charter county could establish a citizens board ("CLERB") to review public complaints filed against the county sheriff and probation departments. The court stated in part:

"Section 25303 requires a county board of supervisors to `supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and *particularly* insofar as the functions and duties of such county officers . . . relate to the assessing, collecting, safekeeping, management, or disbursement of public funds.' (Italics added.) The statute specifies that the `independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney' shall not be `affect[ed]' or `obstruct[ed]' by the board of supervisors' oversight.

"Plaintiff asserts section 25303 gives the board of supervisors only the authority to

monitor the *fiscal* conduct of county officers. Although the statute stresses the need for such supervision, it is plainly not so limited. Indeed, as one court has observed in a different context, the statute permits the board of supervisors to `supervise county officers in order to insure that they faithfully perform their duties . . . ." [Citation.] Indeed, the operations of the sheriff's and probation departments and the conduct of employees of those departments are a legitimate concern of the board of supervisors. As the Court of Appeal observed below: `Review of citizen complaints and peace officer-related deaths might suggest the need for new or different types of training for personnel in the two departments which the [board of supervisors] would have to fund. Politically the [board of supervisors] might be concerned about public distrust of investigations conducted by either the sheriff or district attorney and hopeful that investigations by a group not aligned with law enforcement would restore public confidence, particularly if that group reached conclusions consistent with the sheriff and district attorney.'

"Plaintiff next asserts the very existence of the CLERB is preempted by or otherwise in conflict with state law. He argues the CLERB will inevitably obstruct and infringe on the investigative functions of the sheriff (see Pen. Code, § 832.5, subd. (a) [mandating establishment by sheriff of `procedure to investigate citizens' complaints' against sheriff personnel]) and district attorney, and the constitutional oversight of the Attorney General over the sheriff (see Cal. Const., art. V, § 13 [Attorney General has `direct supervision over every district attorney and sheriff']). We agree with the Court of Appeal that these concerns are answered by section 25303 and San Diego County Administrative Code article XVIII, section 340.15, under which the board operates. The cited statewide statute, as noted above, specifies that the board of supervisors' oversight responsibility `shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county.' (§ 25303.) The cited county code section requires CLERB to `cooperate and coordinate' with the sheriff and district attorney so that all three may properly discharge their responsibilities. (San Diego County Admin. Code, art. XVIII, § 340.15.) Given these requirements, we assume the CLERB will not interfere with the proper functioning of the two other county officials, or with the Attorney General's constitutional responsibility to oversee the sheriff. [Citations.]

"We conclude that under section 25303, the board of supervisors has a statutory duty to supervise the conduct of all county officers. [Citation.] Moreover, section 31000.1 permits the board of supervisors to establish a commission of citizens to study and report on matters within the board's `general or special interest.' It follows that the creation and existence of the CLERB is authorized by statute, and is thus a proper exercise of charter county authority under California Constitution, article XI, section 4, subdivision (h)." (*Id*., at pp. 1209-1210; fns. omitted.)

With respect to the county counsel, section 26526 provides that "[t]he county counsel . . . is the legal advisor of the board of supervisors. . . ." The county counsel's other major function is to "defend or prosecute all civil actions or proceedings in which the county or any of its officers is concerned or is a party in his or her official capacity." (§ 26529.) In *Harvey* v. *County of Butte* (1988) 203 Cal.App.3d 714, the court summarized the duties of the county counsel in providing civil legal services to county officers:

"The statutes which govern the provision of civil legal services to counties are contained in the Government Code. Unless otherwise provided, the district attorney, an officer of the county (§ 24000, subd. (a)), is charged with providing civil legal services to county government, e.g. defending and prosecuting litigation (§ 26521), advising the board of supervisors (§ 26526), and providing written opinions to county and district officers on matters pertaining to their duties (§ 26520).

"The county may appoint a county counsel to perform such services pursuant to the

authority of a county charter (Cal. Const., art. XI, § 4, subd. (c)) or statute (§ 27640). In either event, the county counsel supplants the district attorney in the provision of civil legal services. (§§ 27642, 26529.) If the board of supervisors appoints a county counsel pursuant to section 27640, it `shall furnish the county counsel with such assistants as will enable him to perform properly the duties of his office.' (§ 27644.) Such an appointment is for a four-year term during which the county counsel may only be removed for cause. (§ 27641.) . . . .

"Notwithstanding these provisions a county is authorized to contract with private counsel for specified legal services.

"A board of supervisors, by a two-thirds majority vote, may employ counsel to assist the county counsel in the conduct of litigation. (§ 25203.) The board may also contract for special services, including legal services. (§ 31000.) Lastly, section 31001.4 provides that in a county where the charter does not create an office of county counsel the board of supervisors may contract with counsel to assist the district attorney in providing representation and advice to county officers . . . ." (*Id.*, a pp. 720-721; fns. omitted.)

Although the county counsel generally represents county government as a whole, on occasion two county public offices or officers may have adverse interests in the same matter. If each office or officer is considered a "client," the Rules of Professional Conduct of the State Bar of California ("Rules") may preclude representation of one or both of the parties by the county counsel. Rule 3-310 provides in part:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

We recently applied Rule 3-310 in determining whether a county counsel may give legal advice to a board of retirement established under the County Employees Retirement Law of 1937 (§§ 31450-31898) with respect to a matter in which the county could benefit from an action taken pursuant to such advice. (80 Ops.Cal.Atty.Gen. 36 (1997).) We concluded that the county counsel could advise the board even if the board and the county had an actual or potential conflict of interest, if each gave its informed written consent as specified in Rule 3-310. We quoted from *Santa Clara County Counsel Attys. Assn.* v. *Woodside* (1994) 7 Cal.4th 525, 548, as follows:

"`This court's statement of an attorney's duty of loyalty to the client over 60 years ago is still generally valid: "It is . . . an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent. . . . By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests." (*Anderson* v. *Eaton* (1930) 211 Cal. 113, 116.)'" (*Id*., at p. 38.)

In *Civil Service Com.* v. *Superior Court* (1984) 163 Cal.App.3d 70, the court considered whether a county counsel could represent the county in pending litigation between the county and the county's civil service commission where the county counsel had previously advised the commission regarding the matter. In analyzing the attorney-client relationships involved, the court stated:

"We are able to accept the general proposition that a public attorney's advising of a constituent public agency does not give rise to an attorney-client relationship separate and distinct from the attorney's relationship to the overall governmental entity of which the agency is a part. Nonetheless we believe an exception must be recognized when the agency lawfully functions independently of the overall entity. Where an attorney advises or represents a public agency with respect to a matter as to which the agency possesses independent authority, such that a dispute over the matter may result in litigation between the agency and the overall entity, a distinct attorney-client relationship with the agency is created." (*Id.*, at p. 78.)

In explaining its decision to disqualify the county counsel from representing the county, the court stated:

"Our statement that there may be an independent basis to disqualify the county counsel is grounded on the general rule that an attorney may simply not undertake to represent an interest adverse to those of a current client without the client's approval. [Citations.] This record establishes the relationship between county counsel and the Commission is an ongoing one with respect to matters other than the one at issue here. The principle precluding representing an interest adverse to those of a current client is based not on any concern with the confidential relationship between attorney and client but rather on the need to assure the attorney's undivided loyalty and commitment to the client. [Citations.]

"The attorney who represents a client with interests adverse to another current client encounters the very real danger `that he will be tempted, perhaps unconsciously, to favor the interests of a particularly important client over the adverse or potentially adverse interests of a less favored client.' [Citation.] Here there is every reason to believe that county counsel would be tempted to favor the interests of the County in giving advice to the Commission. The Commission's primary, if not sole function, is to pass judgment on the conduct of the County toward its employees. Every Commission decision has the potential of being adverse to one of the County's constituent agencies. Because county counsel is directly responsible to the board of supervisors, it is difficult to conceive how any member of the county counsel's office can render independent advice to the Commission. The structure of the system would appear necessarily to skew such advice in favor of the County and against the county employees. And even in those circumstances where county counsel renders advice to the Commission favoring the employee, such advice places him in a position adverse to his client, the County." (*Id*., at pp. 78-79, fn. 1.)

The court, however, expressly limited its holding:

"While we have determined that county counsel must be disqualified from representing the County in this case, we wish to indicate the limits of our holding. First, it should again be emphasized that a conflict of this nature only arises in the case of and to the extent that a county agency is independent of the County such that litigation between them may ensue.

Second, disqualification of county counsel is not necessarily mandated in future cases involving quasi-independent agencies. We have noted that a fundamental conflict arises whenever county counsel is asked to represent both the Commission and the County. Moreover, it is clear from the course of this case that county counsel, with good reason, views his primary responsibility as being to the board of supervisors. If the Commission is afforded access to independent legal advice, however, there is no reason county counsel may not continue to vigorously represent the County even when such representation results in litigation against the Commission. We need not and do not decide whether the Commission, appropriately informed and advised in a given case, could validly waive the conflict at the advisory stage." (*Id.*, at pp. 84-85; fn. omitted.)

Returning to the respective roles of a sheriff and a board of supervisors in light of the principles stated above, we find that the sheriff possesses independent authority as to his investigative function, jail-keeping duties, personnel assignments, and allocation of budgeted funds. A dispute or disagreement involving any of these areas could result in litigation between the sheriff and the board of supervisors. When the sheriff asks the county counsel for legal advice pertaining to his actions or plans in one of these areas and such advice is rendered, an attorney-client relationship is created that is separate and distinct from the county counsel's relationship to the county as a whole. Depending upon the circumstances, the sheriff would be entitled to independent counsel for advice and representation.

We do not view the county counsel's declaration of a conflict as a necessary prerequisite to a sheriff's entitlement to independent counsel. Normally, of course, the county counsel would declare a conflict. However, if he does not, the sheriff may do so in appropriate circumstances. (See *Municipal Court* v. *Bloodgood* (1982) 137 Cal.App.3d 29 [judge entitled to representation due to a declared conflict of interest; judge as well as county counsel may make the declaration].)

We recognize that the sheriff's "outside" or "independent" counsel may come from *within* the county counsel's office when a conflict of interest is present. This would be accomplished through procedures establishing an "ethical wall." In *People* v. *Christian* (1996) 41 Cal.App.4th 986, 998, the court observed:

"As the Court of Appeal explained in *In re Lee G.*, *supra*, 1 Cal.App.4th at page 28, disqualification of public sector attorneys should proceed with caution since such disqualifications can result in increased public expenditures for legal representation. `Where only speculative or minimal benefit would be obtained by disqualification of public counsel, the "dislocation and increased expense of government" is not justified. [Citation.]' (*Ibid.*; see also *Castro* v. *Los Angeles County Bd. of Supervisors*, *supra*, 232 Cal.App.3d at p. 1442.) . . . .

"Thus, in the public sector, in light of the somewhat lessened potential for conflicts of interest and the high public price paid for disqualifying whole offices of government-funded attorneys, use of internal screening procedures or `ethical walls' to avoid conflicts within government offices, such as those found acceptable in *Castro*, have been permitted. (See, e.g., *People* v. *Clark* (1993) 5 Cal.4th 950, 999-1000; *People* v. *Hernandez* (1991) 235 Cal.App.3d 674, 681; *People* v. *Lopez* (1984) 155 Cal.App.3d 813, 827; *Love* v. *Superior Court*, *supra*, 111 Cal.App.3d at p. 374.)" (Fn. omitted.)

The primary purpose of establishing an "ethical wall" is to prevent confidential information from being given to opposing counsel. (See *People* v. *Clark* (1993) 5 Cal.4th 950, 1000; *People* v. *Hernandez* (1991) 235 Cal.App.3d 674, 680-681; *People* v. *Lopez* (1984) 155 Cal.App.3d 813, 826-827.) This purpose may be served without having to establish separate units within an office (see *People* v. *Christian*, *supra*, 41 Cal.4th at 998-999; *Howitt* v. *Superior Court* (1992) 3 Cal.App.4th 1575, 1586-1587), since the ethical duty not to have impermissible contacts with opposing counsel "is well known to all attorneys" (*Castro* v. *Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1442). When an ethical wall is properly established, taxpayer funds need not be spent to hire counsel outside of the county counsel's office.

taxpayer funds need not be spent to hire counsel outside of the county counsel's office.

We conclude in answer to the first question that when a county counsel takes a position in favor of the interests of the county board of supervisors and adverse to the interests of the sheriff, a conflict of interest may, depending upon the individual circumstances, thereafter exist without the county counsel's declaration of such conflict so as to entitle the sheriff to legal representation in that matter by independent counsel.

2.        Selection and Payment of Outside Counsel

We next consider the procedures to be followed when the county counsel has a conflict of interest and no "ethical wall" has been established. Section 31000 is the only statute that expressly provides for the county's employment of outside counsel other than in the defense of a civil action or proceeding brought against the officer on account of an act or omission in the scope of his employment. Section 31000 states:

> "The board of supervisors may contract for special services on behalf of the following public entities: the county, *any county officer* or department, or any district or court in the county. Such contracts shall be with persons specially trained, experienced, *expert and competent to perform the special services*. The special services shall consist of services, *advice*, education or training for such public entities or the employees thereof. The special services shall be financial, economic, accounting (including the preparation and issuance of payroll checks or warrants), engineering, *legal*, medical, therapeutic, administrative, architectural, airport or building security matters, laundry services or linen services. They may include maintenance or custodial matters if the board finds that the site is remote from available county employee resources and that the county's economic interests are served by such a contract rather than by paying additional travel and subsistence expenses to existing county employees. *The board may pay from any available funds such compensation as it deems proper for these special services*. The board of supervisors may, by ordinance, direct the purchasing agent to enter into contracts authorized by this section within the monetary limit specified in Section 25502.5 of the Government Code." (Italics added.)

In *Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47, the court held that a school district was not authorized to employ outside counsel to obtain advice when the services of county counsel were available. In *Harvey* v. *County of Butte* (1988) 203 Cal.App.3d 714, 724, the court stated: "*Jaynes* holds that there is no authority to contract for outside legal services unless such authority is expressly conferred on the contracting agency or the services are unavailable `in house' for reasons beyond the agency's control." Accordingly, "if the county counsel is assigned the duty to provide certain legal services, that allocation should not be undercut by contracts with outside counsel unless necessary." (*Ibid.*)

We have already concluded that a conflict of interest on the part of the county counsel may make it "necessary" for the sheriff to receive outside counsel when his independent authority would be impaired by the position taken by the county counsel. If a request for the employment of such services at county expense is made by the sheriff, the board of supervisors has the statutory authority to comply with the request. (§ 31000; cf. § 29601 [expenses of the sheriff which constitute county charges].)

With respect to the sheriff's authority to select the outside counsel, if a public officer is charged by statute with carrying out a duty, he or she has the additional powers that may be fairly implied from the statute to accomplish the duties expressly delegated. (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810; *Stackler* v. *Department of Motor Vehicles* (1980) 105 Cal.App.3d 240, 245.) Thus a sheriff may be impliedly entitled to select outside counsel in order to perform his duties when a conflict of interest arises.

Moreover, because of the sheriff's direct responsibility to the voters and his need for authority commensurate with that responsibility, he may be deemed to possess an *inherent* power to select private counsel in order to protect his ability and right to carry out the organic functions and responsibilities of his office. (See *Barnett* v. *Hunt* (1963) 223 Cal.App.2d 251 [school district, deprived of representation by district attorney's declaration of conflict of interest in proceeding to change the district's boundaries, entitled to private counsel to oppose the boundary change].)

The authority of the sheriff to select outside legal counsel on the basis of an implied or inherent power parallels the statutory power of a judge of a municipal or superior court "to obtain his own counsel" when a conflict of interest is declared. (§ 27648; see *Municipal Court* v. *County of Placer* (1988) 200 Cal.App.3d 1173, 1177-1179; *Municipal Court* v. *Bloodgood*, *supra*, 137 Cal.App.3d at 40-41.)

As for the county's responsibility to pay attorneys' fees, we note that the Supreme Court has recently held that a county clerk was entitled to the reimbursement of attorneys' fees under section 26259 when a conflict of interest prevented the county counsel from representing her in challenging a superior court's local rule transferring her duties as a superior court clerk to a superior court executive officer. (*Anderson* v. *Superior Court* (1995) 11 Cal.4th 1152.) The court explained:

"Under section 26529, county counsel must defend or prosecute all civil actions in which the county or any of its officers is a party `in his or her official capacity.' County counsel declined to prosecute petitioner's suit because of a conflict: he had earlier advised the board of supervisors that the challenged transfer of duties would be legal. The Court of Appeal unanimously held that despite the outcome of the suit, petitioner was entitled to attorney fees under section 26529.

". . . When petitioner was elected county clerk, she was obligated to act as ex officio clerk of the superior court. In seeking to retain those duties, she sued in her official capacity, and is entitled to reimbursement under section 26529." (*Id*., at p. 1162.)

The circumstances in *Anderson* are similar to those in which a sheriff may require the assistance of outside counsel when the county counsel has a conflict of interest and the sheriff's independent authority would be impaired by the position taken by the county counsel. Where the county counsel is statutorily required but unable to provide the legal representation needed by the sheriff, the board of supervisors has an obligation and duty to pay the attorneys' fees of outside counsel selected by the sheriff.

As previously indicated, however, the board of supervisors has plenary authority over the county's budget, including expenses incurred by the sheriff. The board must be able to ensure that the sheriff hires competent counsel at a rate that is appropriate for the type of expertise required. (§§ 25303, 31000.) Therefore, with due regard for the criteria set forth in section 31000, the board may determine the appropriate hourly rate or other fee structure for the employment of outside counsel selected by the sheriff.

We conclude in answer to the second question that when a conflict of interest exists and independent counsel is to be retained for the sheriff, the sheriff may select the counsel and the board of supervisors would be responsible for the payment of attorneys' fees.

\* \* \* \* \*

**Footnote No. 1**
All undesignated section references hereafter are to the Government Code.